UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff<br><br>v.<br><br>**REAL PROPERTY KNOWN AS 17121 COLLINS AVENUE 2708 SUNNY ISLES BEACH, FL 33160**<br>Defendant | § § § § § § § § § §   CIVIL CASE NO. C-18-CV-66 |

### **VERIFIED COMPLAINT FOR FORFEITURE IN REM**

Plaintiff, the United States of America, by and through its United States Attorney for the Southern District of Texas and the undersigned Assistant United States Attorney, represents:

### NATURE OF ACTION

1. This is a civil forfeiture action in rem brought under: (a) 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or any property traceable to such property; (b) 18 U.S.C. § 981(a)(1)(B)(iii) which provides for the forfeiture of any property, real or personal, within the jurisdiction of the United States, constituting, derived from, or traceable to, any proceeds obtained directly or indirectly from an offense against a foreign nation, or any property used to facilitate such an offense, if the offense would be punishable under the laws of the United States by imprisonment for a term exceeding one (1) year, if the act or activity constituting the offense had occurred within the jurisdiction of the United States; and (c) 18 U.S.C. §981(a)(1)(C), which provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation

of section 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355. This court has *in rem* jurisdiction over Defendant Real Property under 28 U.S.C. § 1355(b) and §1355(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district. Further, Title 18 U.S.C. §981(h) provides that "in addition to venue provided in section 1395 of title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for forfeiture of property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property if found or in the judicial district in which the criminal prosecution is brought."

## DEFENDANT REAL PROPERTY

3. The defendant is real property located at 17121 Collins Avenue #2708, Sunny Isles Beach, Florida 33160, with all appurtenances, improvements, and attachments thereon, legally described as:

Unit 2708 of Jade Ocean Condominium, according to the Declaration of Condominium thereof, as recorded April 6, 2009, in Official Records Book 26817, at Page 1453 of the Public Records of Miami-Dade County, Florida, as amended from time to time, together with an undivided interest in the common elements appurtenant thereto,

which description is incorporated herein by reference and hereafter referred to as the "Defendant Real Property."

4. The record owner of the Defendant Real Property is JADE OCEAN 2708 HOLDINGS, LLC, a Florida Limited Liability Company (hereinafter referred to as "JADE OCEAN 2708").

## FACTS

5. Jose Manuel SAIZ-Pineda ("SAIZ-Pineda") was the Secretary of Administration and Finance for Tabasco from January, 2007 through December, 2012. Prior to his appointment as the Secretary of Administration and Finance, SAIZ-Pineda was employed at various companies in the private sector where worked alongside co-conspirator Martin Alberto MEDINA-Sonda ("MEDINA-Sonda"). During his tenure in the private sector, SAIZ-Pineda provided consultation to various states and municipalities in Mexico, affording him the opportunity to experience government service and become acquainted with the eventual Governor of Tabasco, Andres Granier Melo ("Granier"). Granier entered office as the Governor of the state of Tabasco in January, 2007. SAIZ-Pineda assumed his government position as Secretary of Administration and Finance for the state of Tabasco at the same time and was appointed by Granier.

6. As the Secretary of Administration and Finance for the state of Tabasco, SAIZ-Pineda earned an annual salary of approximately $80,000 USD. The income for high-ranking state officials in Tabasco does not exceed $150,000 USD annual salary. For six years, at the highest pay grade of state government, the most income that SAIZ-Pineda could have legitimately earned would have been approximately $900,000 USD.

7. In late 2012, the federal prosecutor's office, Procuraduria General de la Republica ("PGR") of Mexico, and the Tabasco Attorney General's Office (Fiscalia General Del Estado "FGE") initiated an investigation regarding the state debt of Tabasco, which had risen to over one billion pesos (approximately $100 million USD) during the tenure of the Granier administration. According to the new administration, there are state funds that are unaccounted for that equal an equivalent of approximately $190 million USD.

9. SAIZ-Pineda, along with his co-conspirators, created offshore personal holding

companies, trusts, and domestic shell companies to facilitate entry of proceeds into the United States financial system. SAIZ-Pineda, along with his co-conspirators, used the shell companies to establish investment and banking accounts at various financial institutions in the United States. Funds from the United Mexican States, as well as Singapore, were then transferred into the investment and banking accounts in an attempt to legitimize the proceeds derived from the theft of state funds from the state of Tabasco.

10. Information in this investigation has been received as a result of a Mutual Legal Assistance Treaty (MLAT) from the state of Tabasco, as well as from various financial institutions, title companies, and open sources. Analysis of the information led to the discovery of the Defendant Real Property.

11. SAIZ-Pineda ended his government tenure as the Secretary of Finance and Administration on December 31, 2012. On May 22, 2013, approximately 88,560,134 Mexican pesos (approximately $8 million USD) were seized by Mexican authorities from a residence associated with Marlis Cupil-Lopez, the former secretary of SAIZ-Pineda. This seizure led to the execution of a search warrant at the office of SAIZ-Pineda, located at Sanchez Magallanes #1113, Villahermosa, Tabasco, where authorities subsequently seized documentation corroborating the money laundering scheme.

12. On May 30, 2013, the U.S. visas of SAIZ-Pineda and Granier were revoked at the request of Mexican authorities due to flight risk regarding their ongoing investigation. On June 8, 2013, SAIZ-Pineda was stopped at the Pharr, Texas Port of Entry by the Department of Homeland Security. SAIZ-Pineda was denied entry into the United States and returned to Mexico, where he was arrested by Mexican authorities and charged with illegal enrichment.

13. On June 11, 2013, the U.S. visa of Silvia Beatriz PEREZ-Ceballos ("PEREZ-Ceballos"), the wife of SAIZ-Pineda, was revoked at the request of Mexican authorities, and

SAIZ-Pineda was publically implicated in the public corruption investigation being conducted by the state of Tabasco. On or about June 24, 2013, Granier was taken into custody on charges of money laundering and tax evasion.

14. In October, 2014, MEDINA-Sonda was arrested in Quintana Roo, Mexico, on charges of kidnapping his three minor children. While incarcerated, in December, 2014, MEDINA-Sonda was additionally charged by Mexican authorities with money laundering stemming from a money seizure that occurred in November, 2007 and was convicted of the money laundering charges in April, 2017 and sentenced to 12 years imprisonment. MEDINA-Sonda is also alleged to have plotted the murder of his former wife in March, 2017. To date, both SAIZ-Pineda and Granier remain incarcerated in the state of Tabasco while awaiting adjudication.

15. Defendant Real Property was purchased during and in furtherance of the money laundering scheme. On June 11, 2007, MEDINA-Sonda entered into contract for the purchase of Defendant Real Property. The buyer was listed as PERFORMANCE INVESTMENT LIMITED, with MEDINA-Sonda listed as the authorized representative. The purchase agreement listed the sale price as $2,950,000.00 USC.

16. It should be noted, PERFORMANCE INVESTMENT LIMITED was established on November 28, 2006, in Dublin, Ireland, as a personal holding company (PHC) for the benefit of SAIZ-Pineda. On this same date, P.I. TRUST was created, listing SAIZ-Pineda as the owner of P.I. TRUST, and MEDINA-Sonda listed as the Original Protector. GLOBAL TRUSTEES (NZ) LIMITED was the trust administrator (or trustee), and granted the shares of PERFORMANCE INVESTMENT LIMTIED by SAIZ-Pineda. Thus, PERFORMANCE INVESTMENT LIMITED is beneficially owned by SAIZ-Pineda via P.I. TRUST, but administered by GLOBAL TRUSTEES (NZ) LIMITED.

17. SAIZ-Pineda created the PERFORMANCE INVESTMENT LIMITED and P.I. TRUST approximately one month prior to assuming his government position, which he began on January 1, 2007. At the time MEDINA-Sonda entered into contract for the purchase of Defendant Real Property, SAIZ-Pineda had been in his role as the Secretary of Administration and Finance for just over six months.

18. On December 1, 2008, JADE OCEAN 2708 HOLDINGS, LLC was established in the state of Florida. The registered agent of the limited liability company was listed as SLC CORPORATE SERVICES, INC., 1001 Brickell Bay Drive #3112, Miami, Florida. The manager was JEC HOLDINGS LLC, 1001 Brickell Bay Drive #3112, Miami, Florida.

19. JEC HOLDINGS LLC (listed as <u>Manager</u> of JADE OCEAN 2708 HOLDINGS) was a Delaware-based limited liability corporation, incorporated on September 17, 2008, MEDINA-Sonda listed as Manager. Incorporation documents from the state of Delaware for JEC HOLDINGS LLC showed an amendment dated June 28, 2011, to reflect Enrique MARICHAL and Angel GONZALEZ-Monterrubio as newly appointed managers. The form was signed by Jose E. LATOUR (hereinafter referred to as "LATOUR"). On November 27, 2012, an update reflected that Angel GONZALEZ-Monterrubio was removed, and Enrique MARICHAL was named sole manager. The form was signed by LATOUR. On September 5, 2013, the registered agent was designated as National Registered Agents, Inc., and the form was signed by LATOUR.

20. On February 18, 2009, MEDINA-Sonda, acting on behalf of PERFORMANCE INVESTMENT LIMITED, transferred the purchase from PERFORMANCE INVESTMENT LIMITED to JADE OCEAN 2708 HOLDINGS LLC. The "Assignment of Agreement" form was witnessed by Enrique MARICHAL.

21. On this same date, February 18, 2009, MEDINA-Sonda, acting on behalf of JADE OCEAN 2708 HOLDINGS LLC, signed the "Acceptance and Assumption Agreement," where he

accepted the purchase contract as transferred by PERFORMANCE INVESTMENT LIMITED. The "Acceptance and Assumption Agreement," was witnessed by Enrique MARICHAL.

22.  In April of 2009, the escrow deposits for Defendant Real Property occurred within 10 days, totaling $2,727,366.86 and were made towards the purchase of the residence as follows:

  (1) 04/17/2009 - $755,000.00 USC from incoming wire.
  (2) 04/20/2009 - $295,000.00 USC from incoming wire.
  (3) 04/20/2009 - $940,000.00 USC from incoming wire.
  (4) 04/22/2009 - $665,000.00 USC from AMAZING REAL ESTATE S.A. de C.V.
  (5) 04/27/2009 - $72,366.86 USC from Cantor & Webb PA Trust account.

23.  AMAZING REAL ESTATE S.A. de C.V. was the same company utilized to transfer funds towards the purchase of a different real property in this money laundering scheme (the JADE OCEAN PENTHOUSE property, located at 17121 Collins Avenue #4803, Sunny Isles Beach, Florida). The incoming international wire transfers for the JADE OCEAN PENTHOUSE property occurred from November of 2009 through January of 2010, and totaled approximately $6.2 million USC.

24.  The closing documentation for Defendant Real Property was dated April 20, 2009. Included in the documentation was a Power of Attorney designation signed by MEDINA-Sonda, as Manager of JEC HOLDINGS LLC, dated April, 2009. The HUD Settlement Statement showed the purchase as an all cash transaction, with $2,950,000.00 USC as the final sale price and the total amount due from purchaser as $3,078,381.86 USC.

25.  On September 3, 2010, more than one year after the purchase of the Defendant Real Property, a name change amendment was filed in the state of Florida, and the company known as JADE OCEAN 2708 HOLDINGS LLC became SPARTAN INVESTMENT LLC. The amendment did not delete JEC HOLDINGS LLC (MEDINA-Sonda) as a Manager.

26.  On November 29, 2011, Wells Fargo account ending in #6595, held by SPARTAN INVESTMENT LLC (formerly JADE OCEAN 2708 HOLDINGS LLC), was opened by

LATOUR. According to the account application, LATOUR provided the company's articles of organization, dated December 1, 2008, in the state of Florida. The number of employees was listed as two, with an annual gross sales for 2011 reported as $0. The industry was listed as management of companies and enterprises, with the description of the business listed as Holdings Company.

27. The purchase of Defendant Real Property mirrors the purchase of a New York condominium purchased by SAIZ-Pineda and MEDINA-Sonda, which was finalized in February of 2009, just two months prior to the closing of the Defendant Real Property. MEDINA-Sonda, acting on behalf of PERFORMANCE INVESTMENT LIMITED (the personal holding company owned by SAIZ-Pineda), entered into contract for the New York residence in March of 2008, approximately nine months after entering into contract for the purchase of the Defendant Real Property. Prior to closing, MEDINA-Sonda changed the ultimate purchaser to EAST 74TH STREET HOLDINGS LLC. The name of the New York holding company was later changed to SAMURAI INVESTMENT LLC. SAIZ-Pineda and MEDINA-Sonda created layer upon layer in an effort to mask the true ownership of the residence, just as they also did with the purchase of Defendant Real Property.

28. As noted above, the purchase of the Defendant Real Property was initiated in June, 2007, but was not completed until April, 2009. During that time period, in addition to the aforementioned New York residence, SAIZ-Pineda also initiated the purchase of a residence located in Los Angeles, California, in March of 2008. The final purchase of the California residence occurred in May of 2010, approximately one year after the final closing of the Defendant Real Property.

29. It is significant to note that the aforementioned real property purchases were finalized as all-cash transactions. This investigation has revealed the purchase of seven real

properties, all conducted as cash transactions, totaling approximately $30 million USC, all purchased while SAIZ-Pineda held public office. During his government tenure, SAIZ-Pineda was required to file annual wealth and asset declarations for the state of Tabasco, which includes the requirement to declare assets owned internationally. In those annual filings, SAIZ-Pineda did not disclose the ownership of any of the aforementioned properties, to include the Defendant Real Property.

30. On April 26, 2017, a federal grand jury in the Southern District of Texas, Corpus Christi, Texas, returned a true bill indictment for SAIZ-Pineda, Silvia PEREZ-Ceballos (the wife of SAIZ-Pineda), and MEDINA-Sonda. They were charged in a two count indictment with a money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h) and a bank fraud conspiracy, in violation of Title 18, United States Code, Sections 1344 and 1349. In addition to the criminal indictment, criminal forfeiture included seven real properties, to include the Defendant Real Property, six financial accounts, and a personal money judgment for $50 million USD. In October of 2017, PEREZ-Ceballos was convicted of a bank fraud conspiracy after a federal jury trial. SAIZ-Pineda and MEDINA-SONDA remain in custody in Mexico.

31. During the jury trial of PEREZ-Ceballos, multiple witnesses testified that Defendant Real Property belonged to SAIZ-Pineda and that PEREZ-Ceballos was involved in the process of locating and purchasing Defendant Real Property.

30. Also during the jury trial of PEREZ-Ceballos, LATOUR identified his role as the "wallet" in the money laundering scheme of SAIZ-Pineda. LATOUR explained that he was responsible for paying expenses through the use of shell companies so that the names of SAIZ-Pineda and PEREZ-Ceballos would not appear on documentation. LATOUR testified that he acted as the "wallet" for multiple real property transactions, including Defendant Real Property, and numerous other expenses on behalf of SAIZ-Pineda and PEREZ-Ceballos. These

transactions occurred during the government tenure of SAIZ-Pineda and continued even after the arrest of SAIZ-Pineda by Mexican authorities. LATOUR testified that after the arrest of SAIZ-Pineda, LATOUR continued to hide assets for SAIZ-Pineda, including millions of dollars in personal assets and real properties. LATOUR also sent multiple bulk cash deliveries to Houston, Texas, for the benefit of PEREZ-Ceballos after the arrest of SAIZ-Pineda.

31. To date, Defendant Real Property continues to be held in the name of SPARTAN INVESTMENT LLC. Further, the government has received additional evidence after the jury trial of PEREZ-Ceballos that in August of 2016, LATOUR was directed by SAIZ-Pineda to enter into a mortgage agreement regarding Defendant Real Property. The mortgage amount was for $1.45 million USC and included an agreement that the monies obtained were not for living expenses. The mortgage was entered into for the financial benefit of PEREZ-Ceballos, who was in need of living expenses after the arrest of SAIZ-Pineda. The mortgage is currently in default for the full amount of the initial agreement ($1.45 million USC) plus interest.

## NOTICE TO ANY POTENTIAL CLAIMANTS

YOU ARE HEREBY NOTIFIED that if you assert an interest in the Defendant Real Property which is subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claims must be filed no later than thirty-five (35) days from the date this Complaint has been sent in accordance with Rule G(4)(b).

An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

## PRAYER

WHEREFORE, the United States of America prays that judgment of forfeiture be entered against the Defendant Real Property in favor of the United States of America and for such costs and other relief to which the United States of America may be entitled.

                                                 Respectfully submitted,

                                                 ABE MARTINEZ
                                                 Acting United States Attorney

By:   <u>s/ Julie K. Hampton</u>
        JULIE K. HAMPTON
        Assistant United States Attorney
        State Bar No. 24032269
        Federal Bar No. 431286
        800 N. Shoreline Blvd., Suite 500
        One Shoreline Plaza
        Corpus Christi, Texas 78401
        (361) 888-3111

## VERIFICATION

I, Patricia Trevino, a special agent with Drug Enforcement Administration, hereby affirm and verify that the facts set forth in the foregoing Complaint for Forfeiture in Rem are true and correct to the best of my knowledge and belief.

_____
Patricia Trevino
Special Agent, DEA

Sworn and subscribed before me, the undersigned authority, on this 7th day of March, 2018.

_____
Notary Public in and for the State of Texas

My commission expires:

9-25-2020



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Verified Complaint for Forfeiture In Rem was mailed via certified mail, return receipt requested to:

1. JOSE MANUEL SAIZ-PINEDA, via Mutual Legal Assistance Treaty request, through the Department of Justice-Office of International Affairs. Also sending notice to attorney Andres Sanchez, attorney for Jose Manuel SAIZ-Pineda, Parker & Sanchez, PLLC, 712 Main Street, Suite 1600, Houston, Texas 77002.
2. MARTIN ALBERTO MEDINA-SONDA, via Mutual Legal Assistance Treaty request, through the Department of Justice-Office of International Affairs.
3. SILVIA BEATRIZ PEREZ-CEBALLOS, through attorney F. Andino Reynal, The Esperson Building, 808 Travis, Suite 1553, Houston, Texas 77002.
4. Celso Perez-Ceballos, 2706 Lytham, Sugarland, Texas 77479.
5. Jose Latour, though attorney Mark Shapiro, 1 SE 3rd Avenue #28, Miami, FL 33131.
6. JADE OCEAN 2708 HOLDINGS, LLC, c/o Jose Latour, though attorney Mark Shapiro, 1 SE 3rd Avenue #28, Miami, FL 33131.
7. SPARTAN INVESTMENTS, LLC, c/o Jose Latour, though attorney Mark Shapiro, 1 SE 3rd Avenue #28, Miami, FL 33131.
8. Fernando Saiz-Pineda, through attorney Charles Medlin, 2211 Norfolk St., Ste. 735, Houston, Texas 77098.
9. Chemtov Mortgage Group Corpl, 4141 NE 2nd Avenue, Suite 204-A, Miami, Florida 33137 through attorney Eric R. Schwartz, Weitz & Schwartz, P.A., 900 S.E. 3rd Avenue, Suite 204, Fort Lauderdale, Florida 33316.

on this the 7th day of March, 2018.

                                                  s/ Julie K. Hampton
                                                  JULIE K. HAMPTON
                                                  Assistant United States Attorney