UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Case No. 2:18-cv-066 |
| | § | |
| REAL PROPERTY KNOWN AS | § | |
| 17121 COLLINS AVENUE 2708 | § | |
| SUNNY ISLES BEACH, FL 33160, | § | |
| *Defendant*. | § | |

## AMENDED MOTION TO DISMISS

Claimant Spartan Investment, LLC ("Claimant") moves to dismiss this forfeiture action.

### I.    LEGAL STANDARD

To survive a motion to dismiss under 12(b)(6), the plaintiff must allege sufficient facts showing a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662. 678 (2009). The plaintiff must plead "specific facts, not mere conclusory allegations" satisfying the elements of its claim; the court may not "strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) (internal quotations and citation omitted).

In addition, actions *in rem* must meet a heightened pleading standard under Fed. R. Civ. P. Supplemental Rules G(2)(f) and, by incorporation, Rule E(2)(a) ("[T]he complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to

commence an investigation of the facts and to frame a responsive pleading"). [1] "While …

the Government need not *prove* elements of its case at the pleading stage, the Government

is compelled by the specificity requirement of Rule E(2)(a) to allege facts which are

sufficient to support a reasonable belief that those elements are met." *United States v.

$49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). In addition, where the Government

relies on an "in furtherance" or "involved in" theory of forfeiture, the Government must

further establish a "substantial connection between the property and the offense." 18 U.S.C.

§ 983(c)(3).

## II.     ARGUMENT & AUTHORITIES

### A.  The Complaint does not contain a short and plain statement of the claim.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a short and

plain statement of the claim. A motion to dismiss is an appropriate remedy for complaints

that fail to meet this requirement. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Here, the Complaint starts with a "Nature

of Action" section that is cut-and-pasted from 18 U.S.C. § 981, listing out almost every

theory available to the Government in civil asset forfeiture cases, without any limitations,

as a basis to seize the Florida property (the "Property"). Doc. 1 ¶ 1. The remainder of the

---

[1] The Fifth Circuit has held that the Supplemental Rules impose a "substantive pleading requirement"; the plaintiff "must do more than simply provide greater detail than it otherwise would be required to do under Rule 8." *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). Furthermore, the heightened pleading requirements must be strictly followed. "Where the government seeks the traditionally disfavored remedy of forfeiture, due process protections ought to be diligently enforced, and by no means relaxed." *Armendariz-Mata v. U.S. Dept. of Justice, DEA*, 82 F.3d 679 (5th Cir. 1996). "The peculiar stringency of the particularity requirement in these cases is based on a concern for due process which arises by reason of the 'drastic nature' of these remedies." *U.S. v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 639 (1st Cir. 1988). "Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *U.S v. One 1936 Model Ford V-8 Deluxe Coach*, 307 U.S. 219, 226 (1939).

Complaint is a "Facts" section which does not correspond in any discernable way to 18 U.S.C. § 981. Doc. 1 ¶ 25. As shown below, the Complaint fails to satisfy its burden for any theory.[2]

## B.  The Property is not traceable to proceeds from unlawful activity.

The civil forfeiture statute defines two general categories of property subject to forfeiture: (1) property "traceable" to proceeds of specified unlawful activity, 18 U.S.C. § 981(a)(1),[3] and (2) property "involved in" money laundering if there is a "substantial connection between the property and the offense." *Id.*; 18 U.S.C. § 983(c)(3).

The Complaint attempts to describe a "money laundering scheme" alleging that Mr. Mr. Saiz-Pineda created offshore accounts (presumably outside of Mexico and the United States) and that funds were "transferred into the investment accounts in an attempt to legitimize proceeds derived from the theft of state funds from Tabasco." Doc. ¶ 9 (emphasis added). Six paragraphs later, the Complaint makes another conclusory allegation that the Property "was purchased during and in furtherance of the money laundering scheme." Doc.

---

[2] Forfeiture complaints typically contain specific claims for relief, detailing not only the statute authorizing forfeiture, but the criminal statutes that were allegedly violated, including predicate offenses, when applicable. *See United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1, 5-6 (D.C. Dist. 2008) (Detailing the Government's eight claims for forfeiture including the underlying crimes for each claim, with both the domestic and foreign crimes identified where applicable); *United States v. Davis*, 648 F.3d 84, 87 (2nd Cir. 2011) (Detailing the Government's three claims, with specific crimes alleged for the predicate offenses); *United States v. One White Crystal Covered Bad Tour Glove*, 2012 U.S. Dist. LEXIS 188539, 2012 WL 8455336 (C.D. Cal. Apr. 12, 2012) (Discussing the Government's three distinct claims for forfeiture, and the identified predicate offenses). Here, the Complaint provides no specificity as to the crimes that form the basis for forfeiture, with the authority cited leaving the door open for a number of different theories including: owning/managing/supervising an unlicensed money transmitting business; relating to prohibited transactions involving nuclear materials; activity constituting an offense involving a Federal health care offense; and a felony violation of the Federal Water Pollution Control Act.

[3] *See U.S. v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 158 (3d Cir. 2003) (emphasis added) ("In forfeitures under section 981, the government is *required to trace the seized property directly to the offense* giving rise to the forfeiture.").

¶ 15 The Complaint stops there, never stating that the alleged theft produced funds used to purchase the Property.

Without more, these conclusory allegations do not satisfy the particularity requirements of Supplemental Rules G(2) and E(2). *See $39,000 in Canadian Currency*, 801 F.2d 1210, (10th Cir. 1986) (complaint alleged that funds were traceable to unlawful transactions but failed to specify date, location, amount, and participants in transactions); *U.S. v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 639 (1st Cir. 1988) (same); *U.S. v. $38,000*, 816 F.2d 1538, 1544 (11th Cir. 1987) (same); *U.S. v. $1,399,313.74 in U.S. Currency*, 591 F.Supp. 2d 365, 374 (S.D.N.Y. 2008) ("Although the Government states in conclusory fashion that 'the Defendant Funds constitute criminally derived property derived from narcotics trafficking and the laundering of monetary instruments,' this bare allegation cannot support the claim.").

Admittedly, the Complaint contains payment details for the *purchase* of the Property from U.S. accounts (dates, amounts, check numbers, and account information for U.S. accounts). But no payment details are provided for transfers from Mexican state government accounts to U.S. accounts. The only reasonable conclusion is that, nearly five years after U.S. and Mexican authorities commenced investigations, with the benefit of a Mutual Legal Assistance Treaty, and after a 10-day jury trial, the Government has proven unable to produce evidence tracing the Property to unlawful activity or to allege that it could produce such evidence. *See infra* Part II(B)(b).

### a. Corporate ownership does not suggest that the Property is traceable to unlawful activity.

In lieu of tracing the Property to stolen funds, the Government alleges that the purchase constituted a money laundering scheme on grounds that the purchaser was a limited liability company represented by third parties: Angel Gonzalez-Monterrubio, at the time an employee of Mr. Saiz-Pineda, and Enrique Marichal, a real estate broker. Doc. 1 ¶¶ 16 & 17. Such arrangements are not only lawful but routinely used by foreign investors and public figures in order to protect purchasers' privacy, as well as to limit liability and transfer administrative responsibility. *See, e.g., United States v. One White Crystal Covered Bad Tour Glove*, 2012 U.S. Dist. LEXIS 188539, 2012 WL 8455336, at 10 (C.D. Cal. Apr. 12, 2012) ("Moreover, many of the facts pled to support this third basis for forfeiture, such as Nguema's use of shell companies and corporations (FAC ¶ 76) to purchase luxury items, are commonplace financial arrangements and do not readily, without further allegations, support the reasonable belief that the Government will be able to meet its burden of proof at trial with regards to the money laundering allegations.").

### b. References to criminal charges do not suggest that the Property is traceable to unlawful activity.

The Complaint alleges that criminal charges have been filed against Mr. Saiz-Pineda and three other individuals, but it fails to include the underlying allegations, much less facts that would support a belief that the actions that led to Mr. Saiz-Pineda's arrest produced assets traceable to the purchase of the Property.

First, the Complaint states that Mr. Saiz-Pineda was arrested in June 2013 by Mexican authorities and charged with illegal enrichment. Doc. 1 ¶ 12. The Complaint does not describe the factual allegations or Mexican law authorizing the arrest. The Complaint states only that "Saiz-Pineda was publicly implicated in the public corruption investigation being conducted by the state of Tabasco." Doc. 1 ¶ 13. The Complaint acknowledges that despite arrests almost five years ago, Mr. Saiz-Pineda has not been convicted of any unlawful activity and remains incarcerated in Tabasco "awaiting adjudication." Doc. 1 ¶ 14.

Second, the Complaint refers to criminal charges against third parties—Mr. Granier, Martin Alberto Medina-Sonda, and Ms. Perez-Caballos. Mr. Granier is alleged to have "become acquainted" with Mr. Saiz-Pineda before becoming governor in 2007, at which time he appointed Mr. Saiz-Pineda to a government position. Mr. Granier was charged in Mexico with money laundering and tax evasion in 2013 and, like Mr. Saiz-Pineda, has not been convicted. No facts are alleged which connect Mr. Granier's charges to Claimant or to the purchase of the Property. Similarly, Mr. Medina-Sonda is alleged to have "worked alongside" Mr. Saiz-Pineda prior to his appointment and to have been convicted by an unknown entity of money laundering based on an event that occurred in 2007. The Complaint does not allege that any money involved in Medina-Sonda's conviction was ever even sent to the United States. Finally, Ms. Perez-Ceballos, the wife of Mr. Saiz-Pineda, is not alleged to have been involved in the purchase of the Property. The Complaint alleges that the Government indicted her with Mr. Saiz-Pineda on a charge of money laundering conspiracy, incorporating a notice of criminal forfeiture of the Property. What

the Complaint does not mention, of course, is that the jury acquitted her of conspiracy to commit money laundering.  The fact that Ms. Perez-Ceballos was charged with a money laundering scheme—and acquitted—cannot support a reasonable belief that the Property is traceable to money laundering.

In summary, the Complaint does not contain sufficient factual details to support a reasonable belief that the Property was purchased with funds traceable to stolen Mexican state funds or with proceeds of any of the other laundry-list of underlying crimes referenced in the "Nature of Action" section.

**C.  The Property lacks a "significant connection" to unlawful activity.**

Under 18 U.S.C. § 983(c)(3), property that is "involved in unlawful activity" but that does not constitute traceable proceeds of the offense may be forfeited if there is a "substantial connection between the property and the offense." The Fifth Circuit has held that such "untainted" property may only be forfeited if it is commingled with "tainted" property in order to facilitate the underlying offense. *United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir. 1997) ("[M]erely pooling tainted and untainted funds in an account does not, without more, render that account subject to forfeiture.").

Here, the Complaint alleges that the Property was purchased "during and in furtherance" of an unspecified money laundering scheme. Doc. 1 ¶ 15. The Complaint does not allege how the Property furthered the unspecified scheme. Simply residing at a location "incidentally" during the commission of an unrelated scheme is not sufficient. *See Tencer*, 107 F.3d at 1135 (citing cases); *U.S. v. One 1989 Jaguar XJ6*, 1993 WL 157630 (N.D. Ill. May 13, 1993) (vehicle used for transportation to site of money laundering transaction was

7

too incidental to satisfy "substantial connection" test). More importantly, as described above, the Complaint does not allege any facts showing the Property was commingled with proceeds traceable to stolen funds. *See supra* Part II(A).

### III.  CONCLUSION

The Complaint falls well short of providing sufficiently detailed facts to connect the Property to a specific money laundering scheme with particularity as required by Supplemental Rules G(2)(f) and E(2)(a). Conclusory allegations that the Property was purchased with unaccounted-for funds from the State of Tabasco or that Claimant could not have afforded the Property solely on the basis of his government salary are not sufficient. Therefore, the Court should dismiss the Complaint.

Respectfully submitted,

PARKER & SANCHEZ, PLLC

/s/ Andres Sanchez
M. Andres Sanchez-Ross
Parker & Sanchez, PLLC
712 Main St., Suite 1600
Houston, Texas 77002
(713) 659-7200

Cooke Kelsey
Parker & Sanchez, PLLC
712 Main St., Suite 1600
Houston, Texas 77002
(713) 659-7200

### CERTIFICATE OF SERVICE

I certify that on this 4th day of May 2018, a copy of the foregoing was served via ECF to Julie K. Hampton, the attorney representing the government in this matter.

/s/ Cooke Kelsey
Cooke Kelsey